UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| MOLLY BROCKMAN HABLUTZEL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 23-060-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STATE FARM FIRE & CASUALTY | ) | **MEMORANDUM OPINION** |
| COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Defendant State Farm Fire & Casualty Company ("State Farm") has filed a motion *in limine* raising five separate objections. [Record No. 35] However, Plaintiff Molly Hablutzel did not file a response in opposition to the motion. Pursuant to Local Rule 7.1(c), Hablutzel's failure to timely respond is grounds for granting State Farm's motion. Nonetheless, the undersigned has conducted a merits review of each request. The motion will be granted, in part, and denied, in part, for the reasons set forth below.

I.

A motion *in limine* aims to streamline evidentiary issues for trial and prevent unnecessary interruptions by excluding irrelevant or prejudicial evidence before it is presented. *Joseph v. Joseph*, No. 19-3350, 2022 WL 3536273, at \*19 (6th Cir. Aug. 18, 2022). "[M]otions *in limine* are not intended to resolve factual disputes," *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Williams v. Johnson,* 747 F. Supp. 2d 10, 14 (D.D.C. 2010)), and courts should only exclude evidence on a motion *in limine* "when the challenged evidence is clearly inadmissible," *Lotz v. Steak N Shake, Inc.*, No. 19-cv-277, 2021

WL 2270353, at *1 (E.D. Ky., June 3, 2021). Whether to grant a motion *in limine* falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012).

## II.

### A.

State Farm first seeks to exclude evidence and arguments not relevant to the underlying contract claim. The undersigned granted the parties' request to bifurcate and stay discovery on the plaintiff's bad faith claim when entering the Scheduling Order in this matter. [*See* Record Nos. 6, p. 2; 7, n.1.] Consistent with that determination, evidence and arguments not relating to the contract claim will be excluded pursuant to Federal Rules of Evidence 401 and 402.

### B.

Next, State Farm moves to exclude claims for property damage to the plaintiff's home relating to gutter replacement and miscellaneous instances of water damage. It argues that there is no expert testimony demonstrating that these items sustained covered storm damage and that Hablutzel's "only properly disclosed expert" regarding causation, Jon Spadafore, has expressly testified that this damage was *not* due to covered storm damage.[1,2] As such, State

---

[1] Two notations in the estimate from American Home Tech state: "All gutters will have to be replaced do to the high back gutter system that is currently on the home, which cannot be detached and reset without damaging gutter system," [Record No. 35-3, p. 13] and "***Gutters will need to be replaced as they will be damaged during removal of roof tiles. Upper flange of gutter extends up from the eave fascia under the first row of tiles. Gutter flange is mechanically attached to the roof deck and is installed over the roof felt***," [*Id.* at 16].

[2] A notation in the estimate from American Home Tech describes the gutters as "weather damaged." [Record No. 35-3, p. 15] Expert witness Jon Spadafore was asked during his deposition if he saw "any *storm damage* to the gutters." [Record No. 35-2, p. 47 (emphasis added)] His

Farm requests Hablutzel be precluded from presenting a contract claim for the replacement of the gutters and water damage that Spadafore testified was the result of the already corroded gutters' failure to carry water away from the house.

During the status conference held on January 18, 2024, the undersigned directed the parties to complete all discovery on or before February 29, 2024. [Record No. 25] The parties' Joint Status Report following that deadline noted that any testimony from Dave Cosgrove would be limited to his opinion "contained in reports, estimates and materials disclosed and available to the parties." [Record No. 30] The only documentation presently before the Court expressing Cosgrove's opinion appears to be an estimate from The Durable Slate Company (estimate # 220408-012), which he presumably prepared on May 23, 2022. [Record No. 23-2] That estimate—which calls for a full roof repair with the installation of new copper gutters, downspouts, valleys, and flashings—says nothing about the cause of the damage. [*Id.*] In a subsequent filing, Hablutzel identified Dave Cosgrove of Durable Slate Company as an anticipated witness and notes that he will testify to "his observations of the damage he observed to the roofing." [Record No. 37] This revelation comes after the discovery deadline and contradicts the parties' agreement, which was conveyed to the Court on March 4, 2024. [Record No. 30] Absent some opinion or information authored by Cosgrove that is already available to the parties (and not the Court), his testimony regarding causation will be limited per the parties' prior agreement.

At this time, and for several reasons, the undersigned will not preclude Hablutzel from introducing evidence relating to the gutters or above referenced water damage. Whether the

---

response was, "No." [*Id.*] When asked if the gutters were corroded, he responded "Absolutely, yes. Heavily, yes." [*Id.*]

gutters will necessarily be damaged in the process of making covered repairs to the roof is a question of fact that has yet been resolved. Spadafore previously testified that the gutters "will be damaged during the process" of repairing the roof. [Record No. 35-2, p. 32] Cosgrove, as the author of the estimate which included gutters, may also be able to shed light on this factual issue. While State Farm points out that the existing testimony appears to refute the existence of *direct* storm damage to the gutters, it does so with incomplete deposition testimony. For example, the provided deposition jumps from page 160 to page 163 while Spadafore is in the middle of answering questions about gutters. It would be improper to exclude potentially relevant evidence based on this limited factual record.

Further, the undersigned has not addressed policy coverage or the applicability of State law or regulation. *See, e.g.*, 806 KAR 12:095, §9. Even with uncontested testimony that the gutters lacked *direct* storm damage, that alone may not preclude a claim. This is particularly so when the same testimony suggests the existing gutters will be necessarily damaged during the covered repair to the roof. This scenario presents a question of fact and a non-evidentiary question of law, neither of which can be properly resolved through a motion *in limine*. Accordingly, State Farm's second request will be denied.

**C.**

Third, State Farm seeks to exclude Spadafore's opinion that the clay tile roof showed wind damage. State Farm notes that Spadafore previously worked as a State Farm field adjuster for thirteen years. During this time, he was on "thousands of roofs" and received "education and training to permit him to identify storm damage on a home." [Record No. 35, p. 6] During this period, however, State Farm notes that he "did not inspect a clay tile roof for

-4-

storm damage and [Spadafore] agreed that Hablutzel's case is the first time he has had the opportunity to work on a claim involving storm damage to clay tile roofs." [*Id.* at 7–8]

But when asked if he has "any specific education and training on how to identify damage, storm damage, on a clay tile roof," Spadafore responded: "Through work at American Home Tech."[3] [*Id.* at 6] He then goes on to explain some of the ways in which damage can be observed on a clay tile roof. Once again, the deposition transcript omits pages (jumping from page 29 to page 33) while Spadafore is actively describing his knowledge on the subject.

State Farm argues that because Spadafore's qualifying expert trait is experience and he has no first-hand experience specific to clay tile roofs, his opinion is not based on a reliable methodology. What limited deposition transcript is provided includes multiple instances of Spadafore describing his knowledge of clay tile damage and tile roof damage more broadly. To the extent that State Farm disagrees with the conclusions reached, his testimony is subject to scrutiny by State Farm's experts and the jury ultimately selected for the case. The Court is satisfied that his considerable training and experience assessing roof damage and articulated knowledge of tile damage and to some extent clay tile damage is sufficient under Federal Rule of Evidence 702 and will be beneficial in assisting a jury. This determination is based solely on the information presented and will not preclude State Farm requesting a *Daubert* hearing should it so desire.

### D.

---

[3] Spadafore answered "no" when later asked if he received "any specific education and training through American Home Tech on how to identify storm damage on a clay tile roof." [Record No. 35, p. 7]

Next, State Farm seeks to exclude evidence or claim that undamaged portions of the clay tile roof should be replaced due to matching issues. It believes that Hablutzel may raise this argument in the context of Kentucky's "matching regulation." The applicability of 806 KAR 12:095 is a question of law, not a matter for a jury to decide. Any arguments relating to State Farm's obligation to "match" tiles pursuant to either administrative regulation or insurance policy provision will be excluded per Rule 403 of the Federal Rules of Evidence.

E.

Finally, State Farm *asserts* that Hablutzel is limited to recovering the actual cash value of any covered damage if it is determined that her home sustained storm damage. This declaration is not properly relayed through a motion *in limine* and will not be addressed.

III.

Based on the foregoing analysis, it is hereby

**ORDERED** that State Farm's Motion *in Limine* [Record No. 35] is **GRANTED**, in part, and **DENIED**, in part, consistent with this Memorandum Opinion and Order.

Dated: June 25, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky